IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| GVEST REAL ESTATE, LLC (f/k/a GEE REAL ESTATE), individually and derivatively on behalf of YARDS AT NODA LLC,<br><br>        PLAINTIFFS,<br><br>  v.<br><br><br>TYSON RHAME, JAMES SHAW, TR REAL ESTATE, LLC, JS REAL ESTATE INVESTMENTS, LLC,<br><br>        DEFENDANTS<br><br>     -and-<br><br>YARDS AT NODA LLC<br><br>        NOMINAL DEFENDANT. | Case No.: |

## VERIFIED COMPLAINT

Gvest Real Estate, LLC, f/k/a Gee Real Estate, LLC ("Gvest"), by its counsel, individually and derivatively on behalf of Yards at NoDa LLC ("Yards at NoDa" or the "Company"), respectfully submits this Verified Complaint against Defendants, Tyson Rhame ("Rhame"), James Shaw ("Shaw"), TR Real Estate, LLC ("TR Member"), and JS Real Estate Investments, LLC ("JS Member," collectively, "Defendants").

## INTRODUCTION

1.     Gvest brings this suit derivatively on behalf of Yards at NoDa and against Defendants Tyson Rhame and James Shaw for breach of fiduciary duty, conversion of corporate funds, breach of the Operating Agreement, and declaratory judgment. Gvest also brings claims individually against TR Member and JS Member for breach of the Operating Agreement.

2. Yards at NoDa was formed to develop property located at 400 East 33rd Street, Charlotte, Mecklenburg County, North Carolina (the "Property") into multi-family housing.

3. Gvest holds a twenty-five (25) percent interest in Yards at NoDa and, as a member of the Company, is a signatory to the Company's Operating Agreement.

4. Under the Operating Agreement and North Carolina law, Shaw and Rhame owe fiduciary duties of good faith, care, and loyalty to the Company.

5. The Defendants have breached their fiduciary duties of good faith, care, and loyalty, and breached the Operating Agreement by failing or refusing to refinance several promissory notes (the "Loans") on commercially reasonable terms following the removal of a Lis Pendens on the Property. Entities Shaw and Rhame control made Loans to the Company that personally benefit Defendants by forcing the Company to pay fifteen (15) percent interest to Defendants' entities, which is nearly three times the interest rate of a conventional loan. Absent a refinancing of the Loans, Yards at NoDa will continue to be starved of any profits and will not have sufficient capital to complete Phase 2 of the development of the Property.

6. Gvest has repeatedly attempted to convince Defendants to honor their obligations and cease converting corporate funds, but it has been met at every turn with a bold-faced refusal. The wrongdoing alleged herein caused and continues to cause substantial damage to the Company and its reputation, goodwill, and standing in the business community.

7. North Carolina law permits members of a North Carolina limited liability company to bring a derivative action in the right of the limited liability company against a manager who has breached its obligations to the limited liability company or otherwise harmed the company.

8. Gvest has previously made a demand pursuant to North Carolina General Statute §57D-8-01 that the Company pursue Defendants for their actions, as described below. A true and

2

correct copy of the demand is attached hereto as **Exhibit 1.** The Company rejected the demand and accordingly, this Complaint seeks injunctive and declaratory relief and damages on behalf of the Company for Defendants' actions. A true and correct copy of the Company's rejection dated September 15, 2025 is attached hereto as **Exhibit 2.**

<u>**PARTIES**</u>

9.     Gvest is a limited liability company organized and existing under the laws of North Carolina with a principal place of business in Mecklenburg County, North Carolina.

10.     Raymond Gee ("Gee"), the sole member of Gvest, is a resident and citizen of the State of Florida.

11.     Upon information and belief, Rhame, the sole member of TR Real Estate, LLC, is a citizen and resident of Atlanta, Georgia, and is presently incarcerated in Georgia, at Federal Correctional Institution Jesup.

12.     Upon information and belief, Shaw, the sole member of JS Real Estate Investments, LLC, is a citizen and resident of Atlanta, Georgia, and is presently incarcerated in in Alabama at Federal Correctional Institution Talladega.

13.     Gvest is a member of Yards at NoDa and has owned a 25% interest in the Company since its inception.

14.     Nominal Defendant, Yards at NoDa, is a limited liability company which was organized on March 5, 2012 with its principal place of business in Mecklenburg County, North Carolina. It is the owner, manager and developer of a multifamily apartment residential property located in Mecklenburg County known as the Yards at NoDa Apartments. Due to its position as a Nominal Defendant, the membership of Yards at NoDa is irrelevant for purposes of diversity jurisdiction.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction over the parties pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the Parties and the amount in controversy exceeds $75,000 exclusive of interest and costs.

16.     This Court has personal jurisdiction over the Defendants because this action involves a dispute or matter arising under the Operating Agreement for Yards at NoDa, which provides in relevant part:

> "any suit involving any dispute or matter arising under this Agreement may only be brought in the United States District Court for the District of North Carolina or any North Carolina State Court having jurisdiction over the subject matter of the dispute or matter. All Members hereby consent to the exercise of personal jurisdiction by any such court with respect to any such proceeding."

17.     Additionally, the claims alleged herein arise from Defendants' actions as Managers and Members of Yards at NoDa, including the actions they took individually and in concert on behalf of the Company to own, manage, finance, and otherwise deal with Property located in North Carolina.

18.     Jurisdiction is proper in this Court and the action is not a collusive one to confer jurisdiction that the Court would otherwise lack.

19.     Venue is proper in this Court because the Operating Agreement contains an enforceable forum selection clause choosing either federal or state court in North Carolina. Moreover, pursuant to 28 U.S.C. § 1391, venue is proper because a substantial part of the events or omissions giving rise to the claim occurred in this District. The registered or principal office of Yards at NoDa is located within Mecklenburg County, North Carolina. Additionally, the Company maintains its principal place of business at the Property, which is also located within Mecklenburg County.

4

**FACTUAL BACKGROUND**

***Gvest Procures the Investment Opportunity***

20.     In 2011, Gee was presented with the opportunity to acquire the Property, an undeveloped parcel of land in the North Davidson ("NoDa") area of Charlotte, North Carolina.

21.     Gee contacted the owners and investigated the prospect of developing the Property into a residential multifamily development.

22.     Based upon his due diligence, investigation, and significant experience in real estate, Gee determined that the Property had investment potential – in part given the expansion of the Charlotte, North Carolina light rail passenger system in close proximity to the Property.

23.     Gee, through his limited liability company, Gvest, approached investors and together formed Yards at NoDa to develop the Property.

24.     Yards at NoDa sought to develop the Property in two phases.

25.     The project is in Phase 1 of development, offering studio, one-, two- and three-bedroom residences and curated community spaces.

26.     Yards at NoDa has planned a Phase 2 of development, which will expand the residential offerings, generating significant additional revenue for the Company.

27.     The first phase of the Property's development, consisting of 182 apartment units, is generating an income in excess of $2,000,000 annually.

28.     Phase 2 was scheduled to begin in 2015. But it has not, despite years of attempts by Gvest to get the Defendants, as Managers of the Company, to undertake the next phase of development.

***Gvest Enters into a Valid and Binding Operating Agreement with Defendants***

5

29.     On March 5, 2012, Gee, as manager of Gvest (f/k/a Gee Real Estate, LLC), Shaw, as principal of JS Real Estate Investments LLC ("JS Real Estate"), and Rhame, as principal of TR Real Estate, LLC ("TR Real Estate"), entered into a valid and binding Operating Agreement for Yards at NoDa.

30.     The Operating Agreement named Gee and Shaw as the managers of Yards at NoDa ("Managers"). Operating Agreement ¶ 5.1.1. A true and correct copy of the Operating Agreement is attached hereto as **Exhibit 3.**

31.     This Operating Agreement sets forth certain obligations that the Managers owe directly to the Company's members, including Gvest, JS Real Estate and TR Real Estate (collectively, "Members").

32.     As set forth in the Company's Operating Agreement, Gvest holds a 25% interest in the Company. JS Real Estate and TR Real Estate each hold a 37.5% interest in the Company.

33.     Pursuant to the Operating Agreement, Yards at NoDa is organized to "acquire, own, manage, finance, sell, and otherwise deal with the [certain parcels of real property consisting of approximately 11.08 acres, having an address at 400 East 33rd Street, Charlotte, Mecklenburg County, North Carolina (the "Property")] …" Operating Agreement, Section 2.3(i).

34.     Section 5.4.1 states in relevant part that the Managers are liable for damages to Yards at NoDa or to other members of Yards at NoDa for any action taken or failure to act on behalf of Yards at NoDa, which were done "fraudulently or in bad faith unless the action or omission constitutes gross negligence."

35.     Section 5.5.1 explains Managers may be held individually liable to Members of the Company "for fraud, gross negligence, or an intentional breach of this Agreement."

6

36.     Section 5.4.3 states that "Each Member understands and acknowledges that the conduct of the Company's business may involve business dealings and undertakings with Members and their Affiliates. In any of those cases, those dealings and undertakings shall be at arm's length and on commercially reasonable terms."

37.     Defendants used the minority interests of JS Real Estate (Shaw's entity) and TR Real Estate (Rhame's entity) to form a majority interest in the Company and acted in concert to pass a Corporate Resolution signed August 29, 2014, **Exhibit 4**, appointing Rhame as Manager and displacing Gee.

### *A Civil Forfeiture Action Is Filed Against the Defendants*

38.     On June 5, 2015, the United States filed a Civil Forfeiture action against Rhame and Shaw styled as *United States of America v. The Real Property Located at 225 Valley Road, N.W. Atlanta, Fulton County, GA, et.al.* Civil Action No. 1: 15-CV-2032-LLM, United States District Court for the Northern District of Georgia, Atlanta Division (the "Civil Forfeiture Action"), alleging that they had engaged in wire and mail fraud and money laundering in connection with their ownership and operation of an entity unrelated to Yards at NoDa – Sterling Currency Group, LLC.

39.     On July 16, 2015, Yards at NoDa's then-construction lender, Wells Fargo Bank, declared a default on its loan to the Company based upon the commencement of Civil Forfeiture Action.

40.     The government recorded a Lis Pendens on the Yards at NoDa Property on February 10, 2016 after a Federal Grand Jury in the Northern District of Georgia charged Shaw and Rhame in the above-mentioned case.

7

41. The Lis Pendens was signed by Assistant United States Attorney Kelly Connors noting that "YARDS AT NODA, LLC, together with all appurtenances thereto, improvements thereon, furnishings and fixtures, is subject to forfeiture to the United States of America."

42. On October 9, 2018, Shaw and Rhame were convicted of conspiracy to commit mail and wire fraud, mail fraud, and wire fraud. Rhame was also convicted of making false statements to federal agents.

43. On December 10, 2021, Rhame was sentenced to 15 years of incarceration and Shaw was sentenced to 7 years, 11 months of incarceration.

44. As of the date of the filing of this Complaint, Rhame and Shaw remain incarcerated in federal prison, while also maintaining their positions as Managers of the Company.

### _Defendants Maintain Loans on Unfavorable Terms to the Company_

45. It was reported to Gvest that because of the Lis Pendens, Yards at NoDa could not obtain outside financing to retire the Wells Fargo Bank loan.

46. Due to the purported inability to obtain outside financing resulting from the Lis Pendens on the Property, the Defendants – in their capacity as Managers of Yards at NoDa – conspired to cause Yards at NoDa to enter into Loans with various entities related to the Defendants (including Primestone Properties, LLC, Lullwater Holdings, Shaw Capital & Guaranty LLC, and Levan Capital, LLC (collectively, the "Manager-Related Entities")). True and correct copies of the Loans are attached hereto as **Group Exhibit 5.**

47. The Loans from the Manager-Related Entities to the Company carry up to fifteen (15) percent interest and are otherwise unfavorable to Yards at NoDa, starving the Company of profit for the benefit of Rhame and Shaw, and the Manager-Related Entities, and depriving the Company of capital to fund Phase 2 of the development of the Property.

48. Phase 2 would add significant value to Yards at NoDa and fulfills its purpose to own, manage, finance and otherwise deal with the Property.

### *This Lis Pendens is Removed*

49. On August 9, 2022, the court presiding over the Civil Forfeiture Action ordered the Defendants to pay restitution in the amount of $1,682,319.

50. On information and belief, Shaw and Rhame paid the restitution in full, prompting the federal government on or about July 19, 2023, to remove the Lis Pendens from title to the Property.

### *Gvest Notifies Shaw and Rhame About Opportunities to Refinance the Loan and Undertake Phase 2*

51. Given Managers' justification for the Loans was the Company's inability to obtain outside financing due to the Lis Pendens, following the removal of the Lis Pendens, Gvest began exploring opportunities for the Company to once again obtain outside financing on commercially reasonable terms to the Company.

52. On May 30, 2024, Gvest obtained a letter of intent from Dwight Capital LLC, offering to loan the Company $30,911,300 at an estimated interest rate of five and a half (5.50) percent.

53. Thereafter, Gvest notified Yards at NoDa and Managers of this financing opportunity, but no action was taken to pursue the proposed loans.

54. On March 12, 2025, Gvest obtained new letters of intent from Dwight Capital LLC, offering to loan the Company $66,548,000.00 in total in order to refinance the existing loans from the Managers' Related Entities (a $31,000,000.00 proposed loan) and fund development of Phase 2 of the Property (a $35,548,000.00 proposed loan).

9

55. These proposed loans have estimated interest rates of five and a quarter (5.25) percent and six (6) percent respectively – substantially lower than the current fifteen (15) percent interest rates.

56. In response to notice of this opportunity, Yards at NoDa and Managers continued to deny any obligation to refinance the Loans.

57. As of the filing of this complaint, the standard rate offering for loans on multifamily properties is 5.25 percent.

### *Gvest Demands Yards at NoDa Take Action to Sue Shaw and Rhame for Their Unlawful Refusal to Refinance the Loans and Pursue Phase 2*

58. On April 25, 2025, to further investigate Yards at NoDa's decision not to refinance the Loans and obtain information for a potential derivative action, Gvest formally requested to examine the books and records of the Company relating to the business and financial condition of the Company, including but not limited to documents relating to the issuance, maintenance, payment towards, and any attempts to refinance the Loans. A true and correct copy of the Books and Records Request is attached hereto as **Exhibit 6**.

59. Defendants refused to provide Gvest access to inspect the books and records it requested.

60. Further, despite Gvest's requests, Defendants have declined to pursue the letters of intent and have failed to initiate Phase 2 of the development of the Property.

61. On September 4, 2025, Gvest served Defendants, individually and on behalf of Yards at NoDa, with a demand that the Company pursue Shaw and Rhame for their unlawful conduct in refusing to refinance and maintaining the Loans despite other lending opportunities on commercially reasonable terms, and for their failure to conduct the lawful business of the Company

to complete Phase 2 of the Property's development. *See* Ex. 1. A true and correct copy of the proof of service is attached hereto as **Exhibit 7.**

62.     The Company rejected the demand. *See* Ex. 2.

63.     On information and belief, Defendants have taken no steps whatsoever to refinance the Loans.

64.     As a result of their actions, Yards at NoDa and Gvest have incurred significant damage, including damages for the interest the Company paid on the Loans in excess of a commercially reasonable rate, lost profit, diminution in value, and damage to reputation, goodwill, and standing in the business community.

## COUNT I

### BREACH OF FIDUCIARY DUTY
### (DERIVATIVE CLAIM AGAINST RHAME AND SHAW)

65.     The allegations contained in the foregoing paragraphs are incorporated as though fully set forth herein.

66.     The maintenance of this claim as a derivative proceeding is in the best interest of the Company because Shaw's and Rhame's actions have caused, and continue to cause, significant damage to the Company by diverting Company funds and preventing Phase 2 of the Property's development.

67.     Chapter 57D of the North Carolina General Statutes contains the North Carolina Limited Liability Company Act (the "Act"). Pursuant to Section 57D-3-21 of the Act, the managers shall manage the LLC and conduct the LLC's business in accordance with the operating agreement.

68.     Under the Act, each manager shall discharge the person's duties (i) in good faith, (ii) with the care an ordinary prudent person in a like position would exercise under similar

circumstances, and (iii) subject to the operating agreement, in a manner the manager believes to be in the best interests of the LLC.

69.     Defendants at all relevant times herein were acting as Managers of the Company.

70.     Defendants owe the Company a fiduciary duty to exercise good faith, loyalty, and care in the management and administration of Yards at NoDa's business and affairs.

71.     As detailed above, the Defendants have breached their fiduciary duty to Yards at NoDa by failing to refinance the Loans following the removal of the Lis Pendens, diverting Company funds to the Manager-Related Entities each month, and failing to pursue Phase 2 of the Property's development.

72.     Defendants have also breached their fiduciary duty to Yards at NoDa by denying Gvest's requests to inspect the books of records of the Company.

73.     Defendants knew or should have known that their actions and/or inactions would cause damage to the Company.

74.     Defendants intentionally or recklessly breached or disregarded their fiduciary duties to protect the rights and interests of the Company.

75.     These actions were not a good-faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

76.     As a direct and proximate result of Defendants' breaches of their fiduciary obligations, Yards at NoDa has sustained and continues to sustain significant damages in an amount to be proven at trial.

**WHEREFORE**, Gvest, on behalf of Yards at NoDa, prays for an order of judgment in its favor holding Shaw and Rhame liable for breach of their fiduciary duties, requiring Yards at NoDa to provide an accounting of all amounts paid on the Loans, to provide Gvest the requested books

and records, to refinance the Loans at a commercially reasonable rate, and to begin Phase 2 of the Property's development, and awarding damages from Shaw's and Rhame's breach of fiduciary duties, including reasonable expenses and attorneys' fees, and any additional relief this Court deems just and equitable.

## COUNT II

**CONVERSION OF CORPORATE FUNDS**
**(DERIVATIVE CLAIM AGAINST ALL DEFENDANTS)**

77.  The allegations contained in the foregoing paragraphs are incorporated as though fully set forth herein.

78.  The maintenance of this claim as a derivative proceeding is in the best interest of the Company because Defendants' actions have caused, and continue to cause, significant damage to the Company by diverting Company funds.

79.  The Defendants are required to account to Yards at NoDa and Gvest for all transactions of money or property belonging to Yards at NoDa.

80.  Since the Lis Pendens was removed, there are new opportunities for Yards at NoDa to refinance the Loans with an institutional lender at a commercially reasonable interest rate.

81.  Gvest, individually and on behalf of Yards at NoDa, objected to maintaining the Loans following the removal of the Lis Pendens.

82.  Defendants have acted in concert, without the consent of Yards at NoDa and Gvest, to realize improper personal gains by illegally converting Company assets to their own personal use and benefit, including through their actions directing Yards at NoDa to make a payment to the Manager-Related Entities each month on unlawful Loans, according to commercially unreasonable terms.

13

83.     Defendants have failed and refuse to account for such actions as required by law and as demanded by Gvest.

84.     Each month that Yards at NoDa makes a payment on the unlawful Loans to the Manager-Related Entities, Defendants exercise dominion over funds from Yards at NoDa and converts them for their own use.

85.     By reason of Yards at NoDa making monthly payments on the unlawful Loans to the Manager-Related Entities, Yards at NoDa has been damaged by an amount to be proven at trial.

86.     Defendants are liable to Yards at NoDa for improper conversion of corporate property, including damages for the interest the Company paid on the Loans in excess of a commercially reasonable rate, and other damages to be proven at trial.

**WHEREFORE**, Gvest, on behalf of Yards at NoDa, prays for an order of judgment in its favor holding Defendants liable for conversion of corporate funds, requiring Yards at NoDa to provide an accounting of all amounts paid on the Loans and to refinance the Loans at a commercially reasonable rate, and awarding damages from Defendants' conversion of corporate funds, including reasonable expenses and attorneys' fees, and any additional relief this Court deems just and equitable.

## <u>COUNT III</u>

### BREACH OF OPERATING AGREEMENT
### (DIRECT CLAIM AGAINST DEFENDANTS)

87.     The allegations contained in the foregoing paragraphs are incorporated as though fully set forth herein.

14

88.     Pursuant to the Operating Agreement, Shaw and Rhame are required to provide books and records regarding the state of the business and financial condition of the Company to members of the Company, including Gvest, when requested.

89.     The Operating Agreement also requires Shaw and Rhame to manage, finance and otherwise deal with the Property on behalf of the Company and its shareholders, and not to engage in fraud or bad faith in their acts and omissions on behalf of the Company and its members.

90.     Managers are liable to other members of the Company if they engage in fraud, gross negligence, or an intentional breach of the Operating Agreement. Ex. 3, Section 5.5.1.

91.     Further, Section 5.4.3 of the Operating Agreement provides that any business dealings between the Company and Members or their Affiliates "shall be at arm's length and on commercially reasonable terms."

92.     Additionally, North Carolina law imposes on every contract an implied obligation of good faith and fair dealing.

93.     Gvest has sent multiple written requests to the Company, proper in both purpose and structure under N.C.G.S. 57D-3-04, seeking access to review the books, records, and financial reports of the Company since the Lis Pendens was removed on or about July 19, 2023.

94.     Rhame and Shaw, acting as Managers of the Company, have failed to provide Gvest access to the Company records, documents, and reports described in section 8.2.2 of the Operating Agreement.

95.     The Managers have denied Gvest's requests to inspect the books of records of the Company in bad faith.

96.     The Managers are thus liable to Gvest for their breach of the Operating Agreement by failing to provide the requested books and records.

15

97.     Additionally, Defendants breached the Operating Agreement and the implied covenant of good faith and fair dealing by engaging in fraud and bad faith, both individually and acting in concert, when refusing to refinance the Loans on commercially reasonable terms following the removal of the Lis Pendens, maintaining Loans with JS Member and TR Member on commercially unreasonable terms, and failing to pursue Phase 2 of the Property's development.

**WHEREFORE**, Gvest prays for an order of judgment in its favor compelling the Managers of the Company to supply the requested books and records, awarding damages for Defendants breach of the Operating Agreement, and granting any additional relief this Court deems just and equitable.

## COUNT IV

### BREACH OF OPERATING AGREEMENT
### (DERIVATIVE CLAIM AGAINST RHAME AND SHAW)

98.     The allegations contained in the foregoing paragraphs are incorporated as though fully set forth herein.

99.     The maintenance of this claim as a derivative proceeding is in the best interest of the Company because Defendants' actions have caused, and continue to cause, significant damage to the Company by diverting Company funds and preventing Phase 2 of the development.

100.    The Operating Agreement requires Shaw and Rhame to manage, finance and otherwise deal with the Property on behalf of the Company and its shareholders, and not to engage in fraud or bad faith in their acts and omissions on behalf of the Company and its members.

101.    Further, Section 5.4.3 of the Operating Agreement provides that any business dealings between the Company and Members or their Affiliates "shall be at arm's length and on commercially reasonable terms."

16

102.     Additionally, Managers are liable to other members of the Company if they engage in fraud, gross negligence, or an intentional breach of the Operating Agreement. Ex. 3, Section 5.5.1.

103.     Rhame and Shaw intentionally breached the Operating Agreement and engaged in fraud and bad faith, both individually and acting in concert, when refusing to refinance the Loans following the removal of the Lis Pendens and failing to pursue Phase 2 of the Property's development, causing Yards at NoDa significant damage.

**WHEREFORE**, Gvest, on behalf of Yards at NoDa, prays for an order of judgment in its favor holding Shaw and Rhame liable for breach of the Operating Agreement, requiring Yards at NoDa to provide an accounting of all amounts paid on the Loans, to refinance the Loans at a commercially reasonable rate, and to begin Phase 2 of the Property's development, and awarding damages from Shaw's and Rhame's breach of the Operating Agreement, including reasonable expenses and attorneys' fees, and any additional relief this Court deems just and equitable.

## <u>COUNT V</u>

## **DECLARATORY JUDGEMENT UNDER 28 U.S.C. § 2201**

104.     The allegations contained in the foregoing paragraphs are incorporated as though fully set forth herein.

105.     The Operating Agreement is a valid and enforceable contract between Gvest, JS Member and TR Member.

106.     The Operating Agreement and N.C.G.S. 57D-3-04 requires Managers to provide books and records regarding the state of the business and financial condition of the Company to members of the Company, including Gvest, when requested.

17

107.    Gvest has sent multiple written requests to the Company, proper in both purpose and structure under N.C.G.S. 57D-3-04, seeking access to review the books, records, and financial reports of the Company since the Lis Pendens was removed on or about July 19, 2023.

108.    Shaw and Rhame, acting as Managers of the Company, have failed to provide Gvest access to the Company records, documents, and reports described in N.C.G.S. 57D-3-04 and section 8.2.2 of the Operating Agreement.

109.    An actual, genuine, and real controversy exists between Gvest, on behalf of Yards at NoDa, and the Defendants as to the obligation of the Defendants to provide the requested books and records under the Operating Agreement and N.C.G.S. 57D-3-04.

**WHEREFORE**, Pursuant to Rule 57 of the Rules of Civil Procedure and 28 U.S.C. § 2201 Gvest, individually and on behalf of Yards at NoDa, asks the Court to enter judgment, declaring the Operating Agreement a valid and enforceable contract pursuant to which Gvest has a right to inspect the requested books and records of Yards at NoDa.

## PRAYER FOR RELIEF

**WHEREFORE, Plaintiffs pray that this Court grant the following relief:**

1.    Pursuant to Count I, that Gvest be awarded an order of judgment in its favor derivatively on behalf of Yards at NoDa against Shaw and Rhame for breach of their fiduciary duties, requiring Yards at NoDa to provide an accounting of all amounts paid on the Loans, to provide Gvest the requested books and records, to refinance the Loans at a commercially reasonable rate, and to begin Phase 2 of the Property's development, and awarding damages from Shaw's and Rhame's breach of fiduciary duties, including reasonable expenses and attorneys' fees, and any additional relief this Court deems just and equitable.

2.      Pursuant to Count II, that Gvest be awarded an order of judgment in its favor derivatively on behalf of Yards at NoDa against all Defendants holding the Defendants liable for conversion of corporate funds, requiring Yards at NoDa to provide an accounting of all amounts paid on the Loans and to refinance the Loans at a commercially reasonable rate, and awarding damages from Defendants' conversion of corporate funds, including reasonable expenses and attorneys' fees, and any additional relief this Court deems just and equitable.

3.      Pursuant to Count III, that Gvest be awarded an order of judgment in its favor compelling the Managers of Yards at NoDa to supply the requested books and records, awarding damages for Defendants breach of the Operating Agreement, and granting any additional relief this Court deems just and equitable.

4.      Pursuant to Count IV, that Gvest be awarded an order of judgment in its favor derivatively on behalf of Yards at NoDa holding  Shaw and Rhame liable for breach of the Yards Operating Agreement, requiring Yards at NoDa to provide an accounting of all amounts paid on the Loans, to refinance the Loans at a commercially reasonable rate, and to begin Phase 2 of the Property's development, and awarding damages from Shaw's and Rhame's breach of the Operating Agreement, including reasonable expenses and attorneys' fees, and any additional relief this Court deems just and equitable.

5.      Pursuant to Count V, that Declaratory Judgment be awarded to Gvest individually and on behalf of Yards at NoDa pursuant to Rule 57 of the Rules of Civil Procedure and 28 U.S.C. § 2201, declaring the Operating Agreement a valid and enforceable contract pursuant to which Gvest has a right to inspect the requested books and records of Yards at NoDa.

6.      That Plaintiffs be granted trial by jury for all issues so triable.

7.     That the Court award Plaintiffs such other and further relief as it deems just and

proper.


                                        Respectfully submitted,


DATED: December 22, 2025            **BLANK ROME LLP**

                                    By: */s/ Rachel L. Schaller*
                                    Rachel L. Schaller, IL Bar No. 6306921
                                    444 West Lake Street, Suite 1650
                                    Chicago, IL 60606
                                    Tel:(312) 776-2517
                                    Fax: (312)444-0898
                                    Email: Rachel.schaller@blankrome.com
                                    *Attorney for Plaintiffs*
                                    *Pro Hac Vice Pending*

                                    /s/Rex C. Morgan
                                    REX C. MORGAN, N. C. Bar No. 9965
                                    Baucom, Claytor, Benton, Morgan & Wood, P. A.
                                    200 Providence Road, Suite 106
                                    Charlotte, NC 28207
                                    Phone: (704) 376-6527
                                    Fax: (704) 376-6207
                                    Email: rmorgan@baucomclaytor.com
                                    *Attorney for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

|  |  |
|---|---|
| GVEST REAL ESTATE, LLC (f/k/a GEE REAL ESTATE), individually and derivatively on behalf of YARDS AT NODA LLC,<br><br>PLAINTIFFS,<br>v.<br><br>TYSON RHAME, JAMES SHAW, TR REAL ESTATE, LLC, JS REAL ESTATE INVESTMENTS, LLC,<br><br>DEFENDANTS<br><br>-and-<br><br>YARDS AT NODA LLC<br><br>NOMINAL DEFENDANT. | Case No.: |

## **AFFIDAVIT OF RAYMOND GEE**

I, Raymond Gee, being of lawful age, under oath, say:

1.      I am the sole member of the Plaintiff, Gvest, in the above captioned case. Gvest is currently a member of Yards at NoDa LLC and has been since its formation.

2.      I make this Affidavit and Verification in connection with the filing of this Verified Complaint (the "Complaint") in the above captioned action.

3.      I have authorized the filing of this Complaint.

4.      The allegations in the Complaint are true and correct based on my personal knowledge, except to those matters stated on information and belief, which I believe to be true and correct.

5.      Pursuant to 28 U.S.C. § 1746, I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 23 day of December, 2025.

_____
Raymond Gee